UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| TRACY MAXWELL, ) <br> ) <br>  Plaintiff, ) <br> v. ) <br> ) <br> SOCIAL SECURITY ADMINISTRATION, Commissioner, ) <br> ) <br>  Defendant. ) | Case No.: 4:23-cv-1605-AMM |

## MEMORANDUM OF DECISION

Plaintiff Tracy Maxwell brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

I.   **Introduction**

On June 14, 2021, Mr. Maxwell protectively filed an application for supplemental security income under Title XVI of the Act, alleging disability beginning June 14, 2021. R. 17. Mr. Maxwell alleges disability due to diabetes, sleep apnea, heart disease, anxiety, panic attacks, and high blood pressure. R. 60.

The Social Security Administration ("SSA") initially denied Mr. Maxwell's application on September 29, 2021, and again denied it upon reconsideration on April 13, 2022. R. 17, 59–71. On April 19, 2022, Mr. Maxwell filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 17. That request was granted. R. 152–56. Mr. Maxwell received a telephone hearing before ALJ Brian Turner on March 3, 2023. R. 17, 31–58. At the hearing, Mr. Maxwell amended his alleged onset date to May 18, 2022. R. 17, 36. On March 15, 2023, ALJ Turner issued a decision, finding that Mr. Maxwell had not been under a disability since June 14, 2021. R. 14–26. Mr. Maxwell was fifty-four years old at the time of his application and fifty-five years old at the time of the ALJ decision. R. 25.

Mr. Maxwell appealed to the Appeals Council, which denied his request for review on September 28, 2023. R. 1–3. After the Appeals Council denied Mr. Maxwell's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On November 27, 2023, Mr. Maxwell sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.   The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities."

20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis

proceeds to the *fifth* and final step. 20 C.F.R. § 416.920(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 416.920(g)(1), 416.960(c).

The ALJ found that Mr. Maxwell had not engaged in substantial gainful activity since his application date. R. 19. The ALJ decided that Mr. Maxwell had the following severe impairments: coronary artery disease status post myocardial infarction; hypertension; diabetes mellitus; obstructive sleep apnea; and depressive disorder. R. 19. The ALJ determined that Mr. Maxwell did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 19.

The ALJ found that Mr. Maxwell had the "residual functional capacity to perform medium work" with certain limitations. R. 21. The ALJ determined that Mr. Maxwell may not: climb ladders or scaffolds or be exposed to high, exposed places or moving, mechanical parts. R. 21. The ALJ determined that Mr. Maxwell could have frequent exposure to extreme heat, extreme cold, wetness, and humidity. R. 21.

The ALJ also determined that Mr. Maxwell could: understand and remember simple instructions and use judgment to make simple work-related decisions; tolerate frequent changes in a routine work setting; and tolerate frequent interaction with co-workers, supervisors, and the public. R. 21.

The ALJ determined that Mr. Maxwell's past relevant work was that of a chemical lab technician. R. 24. According to the ALJ, Mr. Maxwell "is unable to perform any past relevant work." R. 24. According to the ALJ, Mr. Maxwell is "an individual of advanced age," and he has "a limited education," as those terms are defined by the regulations. R. 25. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." R. 25. Because Mr. Maxwell's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled medium occupational base." R. 25. That expert testified that such individual "would be able to perform the requirements of representative unskilled . . . occupations at the medium level of exertion such as a hospital cleaner . . . ; a change house attendant . . . ; and a dining room attendant." R. 25.

5

Based on these findings, the ALJ concluded that Mr. Maxwell had not been under a disability, as defined in the Act, since June 14, 2021. R. 26. Mr. Maxwell now challenges that decision.

**III. Standard of Review**

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If

the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### IV. Discussion

Mr. Maxwell alleges that the ALJ's decision should be reversed because "the ALJ's finding that [Mr. Maxwell] retains the residual functional capacity to perform a limited range of medium work jobs is not supported by substantial evidence." Doc. 11 at 12. Mr. Maxwell also argues that "[t]he ALJ's failure to order an additional consultative exam to assess [Mr. Maxwell's] sleep apnea has prejudiced [him]." *Id.* at 15.

**A. The ALJ's Residual Functional Capacity Determination**

Social Security Ruling 96-8p ("SSR 96-8p") regulates the ALJ's assessment of a claimant's residual functional capacity. Under SSR 96-8p, the residual functional capacity "assessment must first identify the individual's functional

limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1, 1996 WL 374184 (July 2, 1996). The ruling specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7. Additionally, in cases where symptoms are alleged, the assessment of a claimant's residual functional capacity must: "Contain a thorough discussion and analysis of the objective medical and other evidence . . . ; Include a resolution of any inconsistencies in the evidence as a whole; and Set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.*

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 416.929(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition

is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 416.929(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 416.929(c)(3), (4); SSR 16-3p at *4, *7–*8. "In determining whether a claimant's impairments limit [his] ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r*, 404 F. App'x 362, 366 (11th Cir. 2010). To discredit a claimant's statements, "the ALJ must clearly 'articulate explicit and adequate reasons.'" *See Dyer v. Barnhart*, 395 F.3d 1206 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561–62).

9

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Maxwell argues that "the ALJ's finding that [he] retains the residual functional capacity to perform a limited range of medium work jobs is not supported by substantial evidence." Doc. 11 at 12. Mr. Maxwell argues that his "testimony indicates an inability to perform any such type of work," and he "is not a candidate for medium work." *Id.* at 12–13.

After describing the pain standard, the ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." R. 21.

The ALJ considered Mr. Maxwell's testimony about his symptoms in the analysis of Mr. Maxwell's residual functional capacity. R. 22. The ALJ summarized Mr. Maxwell's hearing testimony as follows:

> At the hearing, [Mr. Maxwell] alleged he cannot work because he cannot stay awake longer than fifteen minutes at one time and does not sleep well at night (Hearing Testimony). [Mr. Maxwell] alleged he is only able to stand approximately five minutes and sit fifteen minutes before having to change positions and that he can only lift approximately five pounds at one time due to his fatigue and weakness (Hearing Testimony).

R. 22. The ALJ also discussed Mr. Maxwell's hearing testimony regarding his sleep apnea as follows:

11

> In terms of [Mr. Maxwell's] obstructive sleep apnea, [he] reported he falls asleep during the daytime every fifteen minutes and thinks this is due to not sleeping well at night (Hearing Testimony). [Mr. Maxwell] testified he has been prescribed a c-pap machine for his apnea but that he does not use it due to symptoms of claustrophobia (Hearing Testimony). [Mr. Maxwell] reported he has not told his current primary care physician about his inability to use a c-pap machine but that he reportedly did when he was first prescribed the machine.

R. 23.

The ALJ found "that [Mr. Maxwell's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Mr. Maxwell's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 22. The ALJ stated that Mr. Maxwell "alleged he is very physically limited due to fatigue and weakness at the hearing, but the records do not support such limitations and are more consistent with a reduced range of medium exertional work." R. 24.

In making this determination, the ALJ considered the objective medical evidence regarding Mr. Maxwell's coronary artery disease status post myocardial infarction, hypertension, diabetes mellitus, obstructive sleep apnea, and depressive disorder. R. 22–23. The ALJ concluded that "[b]ecause [Mr. Maxwell] has had a myocardial infarction, [he] can only have frequent exposure to extreme heat, extreme cold, wetness, or humidity." R. 22. The ALJ noted that Mr. Maxwell "has

12

not been again diagnosed with hypertension in his recent medical care" and "does not appear to have any symptoms from his hypertension." R. 22. However, the ALJ concluded that Mr. Maxwell "would be appropriately limited to never climbing ladders or scaffolds and never be exposed to high, exposed places or moving, mechanical parts." R. 22. The ALJ discussed Mr. Maxwell's lack of medication for his diabetes and his inability to use a c-pap machine for his sleep apnea. R. 23. The ALJ stated that Mr. Maxwell did not take medication for his depressive disorder, nor did he seek formal mental health treatment. R. 23. However, because of Mr. Maxwell's depressive disorder, the ALJ limited him "to simply instructions and simple work-related decisions, as well as frequent interaction with coworkers, supervisors, and the public." R. 23.

Substantial evidence supports the ALJ's finding under the pain standard. The ALJ properly applied the pain standard and clearly articulated reasons for discounting Mr. Maxwell's subjective allegations of disabling symptoms.

In analyzing Mr. Maxwell's testimony, the ALJ clearly discussed the objective medical evidence related to his complaints, including medical evidence before the relevant period. R. 22–23. The ALJ recognized that Mr. Maxwell had presented to health care providers for: coronary artery disease/myocardial infarction, hypertension, diabetes mellitus, obstructive sleep apnea, and depressive disorder. R. 22–23. However, the ALJ also cited lack of further treatment for coronary artery

disease, R. 22; lack of current medication for coronary artery disease, diabetes mellitus, and depressive disorder, R. 22–23; lack of symptoms for hypertension, R. 22; and inability to use c-pap machine for obstructive sleep apnea, R. 23. Notably, the ALJ emphasized that Mr. Maxwell did not share his inability to use his c-pap machine with his current primary care physician. R. 23. The ALJ also discussed Mr. Maxwell's examination by Dr. Michael Tanael "in connection with this application for benefits" in which Dr. Tanael "did not opine as to any limitations based on his examination." R. 23. With respect to his depressive disorder, the ALJ also discussed Dr. Dorn Majure's examination of Mr. Maxwell "in connection with this application for benefits" and noted that Dr. Majure "diagnosed [Mr. Maxwell] with unspecified depressive disorder and opined [he] was unimpaired by his ability to understand, remember, and carry out instructions and in the ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." R. 23. The ALJ also considered Mr. Maxwell's activities of daily living when determining his residual functional capacity. R. 23–24.

Mr. Maxwell argues that his "poverty excuses noncompliance" regarding prescription medication. Doc. 11 at 13. The Commissioner argues that "the ALJ did not unduly rely upon [Mr. Maxwell's] financial inability to afford medication as a factor in finding [his] subjective complaints inconsistent with the record as a whole." Doc. 14 at 11–12. The ALJ did not improperly consider Mr. Maxwell's lack of

treatment or non-compliance with prescription medications because the ALJ did not rely on this exclusively in making his determination.

The ALJ was not "clearly wrong" to discount Mr. Maxwell's subjective complaints. *See Werner*, 421 F. App'x at 938–39. Additionally, Mr. Maxwell has pointed to no evidence that would compel a different conclusion from that found by the ALJ. Instead, Mr. Maxwell only cited his hearing testimony, which was considered in its entirety by the ALJ. *See* Doc. 11 at 12–13 (citing hearing testimony); *see* R. 22–23. There is no evidence in the record to support Mr. Maxwell's testimony that his conditions prevent medium work with the restrictions identified by the ALJ. Accordingly, there is no error in the ALJ's consideration of Mr. Maxwell's subjective complaints.

### B. Lack of SSA-Directed Consultative Examination

An individual claiming benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. 20 C.F.R. §§ 416.917, 416.919a(b); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) (holding that because "the ALJ ultimately found that [claimant] was not disabled . . . SSR 83–20 only required the ALJ to obtain a medical expert in certain

15

instances to determine a disability onset date"); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Mr. Maxwell argues that "[t]he ALJ's failure to order an additional consultative exam to assess [his] sleep apnea has prejudiced" him. Doc. 11 at 15. Specifically, Mr. Maxwell argues that "[t]here is insufficient evidence of [his] sleep apnea in the record," and his sleep apnea is worsening, caused him to lose his job, and prevents him from staying awake for longer than fifteen minutes. *Id.* The Commissioner argues that "the ALJ was not required to further develop the record by ordering a 'sleep study.'" Doc. 14 at 14.

In his decision, the ALJ determined that Mr. Maxwell's obstructive sleep apnea was a severe impairment. R. 19. Mr. Maxwell speculates that a consultative examination would support his claim, but that is not a basis for an ALJ to order a consultative examination. Additionally, Mr. Maxwell has not shown he was prejudiced by the lack of an SSA-directed consultative examination. Substantial evidence supports the ALJ's consideration of Mr. Maxwell's impairments, and Mr.

Maxwell has failed to establish that the ALJ had any obligation to further develop the record.

V.      **Conclusion**

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 13th day of March, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE